# United States Court of Appeals
# For the First Circuit

No. 24-1720

MARC SAVAGE; RANDOLPH BLAKE,
Plaintiffs - Appellants,

v.

CITY OF SPRINGFIELD; SPRINGFIELD FIRE DEPARTMENT; JOSEPH CONANT, Former Springfield Fire Commissioner; BERNARD J. CALVI, Springfield Fire Commissioner,
Defendants - Appellees.

**APPELLANTS' OPENING BRIEF**

February 28, 2025.

Arnold J. Lizana III
Law Office of Arnold J. Lizana III P.C.
444 A North Main Street, Suite 304
East Longmeadow, MA 01028
Telephone (877) 443-0999
Attorney for Appellants Marc Savage and Randolph Blake

# TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of the Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I. District Court erred in failing to provide a proper response to a jury question

II. The District Court erred by failing to give a limiting instruction to the jury regarding the admission of the Civil Service Decisions

III. The District Court erred by denying Appellants' Motion in Limine and by failing to give a limiting instruction to the jury regarding Appellees' First Amendment defense

IV. The District Court erred by misstating the standard of supervisory liability under MGL Chapter 151B when instructing the jury

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

**TABLE OF AUTHORITIES**

*Blake v. Pellegrino*, 329 F.3d 43 (1st Cir. 2003)....................................................13

*Bruton v. United States*, 391 U.S. (1968)............................................................. 23

*Burrus v. Silhavy*, 155 Ind. App. 558, 293 N.E.2d 794 (1973)............................... 23

*College-Town, Div. of Interco v. Massachusetts Comm. Against Discrimination*, 400 Mass. 156 (1987)........................................................................................ 25-28

*Com. v. Lopez*, 420 N.E.2d 319 (Mass. 1981)........................................................ 23

*Com. v. Rollins*, 18 N.E.3d 670 (Mass. 2014)........................................................ 23

*Curran v. Cousins*, 509 F.3d 36 (1st Cir. 2007)..................................................19,21

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)..........................................20

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)..............................................................19

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)............................................. 20

*Jerlyn Yacht Sales, Inc. v. Roman Yacht Brokerage*, 950 F.2d 60 (1st Cir. 1991)....16

*Macrae v. Mattos*, 106 F.4th 122 (2024)................................................................ 21

*McDonough v. City of Quincy*, 452 F.3d 8 (1st Cir. 2006)......................................17

*O'Donnell v. Barry*, 148 F.3d 1126 (D.C.Cir.1998)................................................21

*Oladeinde v. City of Birmingham,* 230 F.3d 1275 (11th Cir. 2000)........................21

*Ouimette v. E.F. Hutton & Co.*, 740 F.2d 72, 76 (1st Cir. 1984).............................16

*Patterson v. Colorado,* 205 U.S. 454 (1907).........................................................13

*Pereira v. Commr. of Soc. Services*, 733 N.E.2d 112 (Mass. 2000)………………21

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).....................................................20

*Sauer v. Belfor USA Group, Inc.*, 2016 U.S. Dist. Lexis 120781 (D. Mass.).........26

*Sullivan v. National Football League,* 34 F.3d 1091 (1st Cir. 1994)................. 16

*U.S v. Ackell*, 907 F.3d 67 (1st Cir. 2018).........................................................25

*U.S v. DeStefano*, 59 F. 3d. 1 (1st Cir. 1995)...............................................15,19

*U.S v. Gray*, 780 F.3d 458 (1st Cir. 2015).........................................................25

*U.S v. Lara*, 181 F. 3d. 183 (1st Cir.1999)...............................................15,19

*U.S v. Richardson*, 421 F.3d 17 (1st Cir. 2005)................................................17

*U.S v. Rivera–Santiago*, 107 F.3d 960 (1st Cir. 1997)…………………………13

*U.S v. Sabetta*, 373 F.3d 75 (1st Cir. 2004).......................................................13

*U.S. v. Ofray-Campos*, 534 F.3d 1 (1st Cir. 2008).............................................12

*U.S. v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021)...................................11

**<u>Statutes & Rules</u>**

Fed. R. Civ. P. 51(A).........................................................................................16

Fed. R. Civ. P. 51(d)(1)......................................................................................16

Fed. R. Evid. 105.........................................................................................16,18

Massachusetts General Laws Chapter 151B ..................................................25-29

**<u>Other Authorities</u>**

9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2552 at 395–97 (1995)..........................................................................................16

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants believe oral argument is necessary to clarify the issues before the Court.

## STATEMENT OF JURISDICTION

The District Court had general federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case arises under federal law, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. This Court has jurisdiction over Appellants' appeal challenging the District Court's Jury Verdict in favor of Appellees pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1)(A). The District Court entered its order and judgment on July 3, 2024. Appellants filed their Notice of Appeal on August 1, 2024.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in failing to provide a proper response to a jury question.

2. Whether the District Court erred by failing to give a limiting instruction to the jury regarding the admission of the Civil Service Decisions.

3. Whether the District Court erred by denying Appellants' Motion in Limine and by failing to give a limiting instruction to the jury regarding Appellees' First Amendment defense.

4. Whether the District Court erred by misstating the standard of supervisory liability under MGL Chapter 151B when instructing the jury.

## STATEMENT OF THE CASE

This is a straightforward and blatant case of a hostile work environment and retaliation. Appellants, Lieutenant Randy Blake ("Blake") and District Chief Marc Savage ("Savage"), are veteran African American firefighters employed by Appellees, the City of Springfield and the Springfield Fire Department. Savage, who is also Muslim, began his service with the Springfield Fire Department in 1968. (ECF 292 at 18:22-25). Savage worked his way up to become one of the first two black captains in the Springfield Fire Department and received numerous awards and medals during his employment. (ECF 291 at 201:23-25). Blake began his service with the Fire Department in 1989. (ECF 289 at 65:25). Likewise, Blake has received several citations for meritorious actions during his employment. Sadly, though, during their time with the Springfield Fire Department, Blake and Savage were unrelentingly harassed by supervisors and coworkers because of their race and religion. This harassment became so intolerable that both Blake and Savage began filing formal complaints in 2014. (ECF 289 at 82:22). These complaints were filed internally as well as with the Civil Service Commission and

Massachusetts Commission Against Discrimination. However, complaints were largely ignored.

Worse yet, when they complained of this harassment, Blake and Savage were openly retaliated against. Despite not receiving any write-ups or discipline in the fifteen years prior, things began to change shortly after filing their complaints. For instance, just three days after filing his complaint, Savage was denied the training needed to serve in a temporary position. (ECF 291 at 197:3-15). Thereafter, Savage received a negative evaluation, which he had never received in his many years of service. (ECF 291 at 197:11-13). Blake likewise began experiencing similar retaliation. At one point, Blake was instructed to attend a Union meeting which he was required to travel outside of Springfield for. (ECF 291 at 31:5-20). The meeting was ultimately canceled, but no one informed Blake of such, who arrived for the meeting. *Id*. Blake then received a period of suspension for this mistake. *Id*. Their work became closely scrutinized and micromanaged by superiors, and they began receiving verbal warnings or write-ups for minor infractions that were never an issue previously. (ECF 291 at 139:2-16).

The retaliation and hostility continued to escalate. In the years following 2014, there were at least fifteen separate incidents of adverse action taken against Savage and Blake—which was a stark contrast to the decades of their exemplary service prior. They were passed over for promotions by their supervisors and

watched as others, who were non-residents of Springfield, were improperly prioritized over them, despite the fact this violated the City of Springfield's residency policy requiring employees to live within Springfield. (ECF 289 at 184:10-185:17). Even more concerning was the onslaught of offensive and alarming social media posts targeting Blake and Savage made by supervisors and coworkers. These posts contained racist and anti-Muslim rhetoric and memes. Many of the posts even advocated or supported violence against these groups of individuals. ADD 2.

What is more, Blake and Savage received threats from coworkers of physical violence. Those threats turned real when, in 2017 and then later in 2019, Blake was assaulted by two different coworkers. (ECF 289 at 87:2-88:11). And, even more terrifying, they received threats of being abandoned while they were fighting fires. ADD 2. One such post, in speaking of Savage and Blake, asked if they have thought about how hard their fellow firefighters would search for them if they were overcome by smoke or fire while on the job. ADD 2. Then, the post went on to say, "just let me put my hands on you so you can keep my fucking name out of your mouth." ADD 2.

To put a stop to this hostile work environment, Blake and Savage filed the underlying complaint against Appellees on October 9, 2018, laying out claims against them for violations of Title VII of the Civil Rights Act of 1964 ("Title

VII") and Massachusetts General Laws Chapter 151B regarding unlawful discrimination, unlawful retaliation and retaliatory harassment. (ECF 1). The case proceeded to a jury trial on June 11, 2024. Over eight days, Blake and Savage presented overwhelming evidence against Appellees of their discriminatory practices, retaliatory actions, and complete failure to address the hostile work environment. As detailed below, however, the District Court erred in several critical respects which undermined the fairness of the proceeding. And, ultimately, the jury found in favor of Appellees. This timely appeal followed. (ECF 301).

## SUMMARY OF THE ARGUMENT

The District Court committed multiple errors warranting reversal by this Court. First, it failed to respond to a jury question concerning when Blake became second on the promotional list behind a non-resident of Springfield—a pivotal piece of evidence in Blake's claim of retaliation. Blake's testimony during trial established he was moved to second on the list from 2016 to 2018. Despite this, the District Court incorrectly concluded that no evidence existed to answer the jury's question and thus instructed them to rely on their memory. The District Court's refusal to answer this question effectively prohibited the jury from deliberating on an issue central to the case.

Second, the District Court erred by failing to provide a limiting instruction to the jury regarding the admission of the Civil Service Commission decisions. Appellees used the decisions to mislead the jury into believing Appellants' claims of discrimination, harassment, and retaliation had already been considered and resolved. This was simply not the case, as the Commission lacks jurisdiction to resolve these issues. Yet, without the limiting instruction by the District Court, the jury could have, and likely did, give undue weight to the Commission's findings. This error unfairly prejudiced Appellants' case and violated the Federal Rules of Evidence.

Next, the District Court erred by allowing Appellees to improperly assert a First Amendment defense. Specifically, Appellees argued their self-described "disturbing" and "upsetting" social media posts targeting Blake and Savage were nonetheless protected speech under the First Amendment. However, the Supreme Court of the United States has long established that speech made by public employees that is offensive and creates a hostile work environment is not protected under the First Amendment. What is more, the District Court failed to give a limiting instruction to the jury clarifying that such speech was not constitutionally protected.

Finally, the District Court improperly instructed the jury on employer liability for harassment committed by supervisors under MGL c. 151B. Instead, the

District Court mistakenly conflated that standard with the standard a complainant must prove to establish an employer is liable for harassment from a coworker. This latter standard requires a showing of knowledge and inaction on the part of the employer, which is not required to prove liability due to harassment committed by a supervisor. This erroneous instruction undoubtedly prejudiced Blake and Savage and confused the jury.

As such, this Court should reverse and remand this matter for a new trial.

## ARGUMENT

### I. The District Court Erred in Failing to Provide a Proper Response to a Jury Question.

#### A. Standard of Review

This Court reviews a district court's response to a jury question for abuse of discretion. *U.S. v. Velazquez-Fontanez*, 6 F.4th 205, 228 (1st Cir. 2021). A district court abuses its discretion when its decision is based on an error of law or a clearly erroneous assessment of the evidence. *Id*.

#### B. Argument

The District Court erred by failing to provide a proper response to the jury's question concerning when Blake became second in line for a promotion. This question was aimed at the heart of Blake's claims. By failing to accurately respond,

the District Court deprived the jury of the opportunity to fully consider this issue and abused its discretion in doing so.

After the case was submitted to the jury, it sent the following question back: “What year did Blake become second on captain’s exam to a nonresident?” (ECF 294 at 5:7-8). The District Court asked trial counsel whether evidence of such was introduced during trial. (ECF 294 at 5:9). Blake’s counsel repeatedly informed the judge that Blake did testify to this. (ECF 294 at 5:11-12; 5:15-18; 5:25; 6:7-8; 6:19-20; 7:13-16; 8:2-6). Specifically, Blake testified between 2016-2018 he was second on the list to a non-resident. (ECF 289 at 184:10-14). However, the District Court ultimately decided, based on its own notes and defense counsel’s contentions that this testimony was not introduced, that “[t]here is no evidence of that. I’m not going to answer a question or provide information that didn’t come into evidence.” (ECF 294 at 7:20-21). The jury was thereafter instructed to rely on its own memory. (ECF 294 at 10:17-18).

A jury's verdict must be based solely upon the evidence developed at trial. *U.S. v. Ofray-Campos*, 534 F.3d 1, 18 (1st Cir. 2008). “The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.” *Patterson v. Colorado,* 205 U.S. 454, 462 (1907). Thus, “a district court must use extreme caution in answering questions from juries so as not to

usurp the jury's fact finding role." *United States v. Sabetta*, 373 F.3d 75, 80 (1st Cir.2004) (quoting *United States v. Rivera–Santiago*, 107 F.3d 960, 965 (1st Cir.1997)).

In *Blake v. Pellegrino*, this Court addressed the issue of whether a trial judge has the authority to exclude evidence based on his own belief as to the persuasiveness of that evidence. 329 F.3d 43, 47 (1st Cir. 2003). In finding that a judge does not, this Court noted that "the jury is the factfinder, and 'the ultimate arbiter of the persuasiveness of the proof must be the factfinder, not the lawgiver.'" *Id*. (internal citations omitted). There, this Court found a new trial was warranted where the judge's actions of redacting a death certificate based on his subjective assessment of its credibility prejudiced the plaintiff and interfered with the jury's function. *Id*. 49-50.

The same conclusion can be drawn here. Judge Robertson's instruction to the jury was demonstrably incorrect and she subjectively determined, based on her own notes and representations made by defense counsel, that the answer to the jury's question had not been introduced at trial. However, Blake's testimony answered this *exact* question. Blake testified that between 2016 to 2018 there was an opportunity for a promotional captaincy and that Blake was second in line behind Lieutenant Michael Kneeland, who was a non-resident. (ECF 289 at 184:10-14). And, based on Blake's understanding of the residency requirements, a

nonresident was not qualified to be promoted to captain. (ECF 289 at 184:15-20). The question presented by the jury and the information sought was indisputably not extrinsic evidence. To the contrary, this evidence was directly introduced at trial. Despite this, Judge Robertson refused to review the recorded testimony, thereby depriving the jury of critical evidence necessary for a fair and thorough deliberation of these issues. This was an abuse of discretion.

This error resulted in prejudice to Blake. To be sure, the question submitted by the jury was at the core of Blake's claims—that is, there was a clear pattern of harassment and that he was retaliated against by his superiors because he complained about such harassment. As part of that retaliation, he was passed over for promotions and his superiors were willing to violate the City's residency requirement to avoid promoting him. The error also prejudiced Savage's case because he too was passed over for a promotion in favor of non-resident violators of Springfield's residency law. The judge could have easily reviewed the audio recording of Blake's testimony or allowed his counsel to review it to identify the relevant section for the court. Rather, the judge reviewed her own notes and stated "I've taken careful notes of Mr. Blake's testimony, and my notes don't show any testimony by Mr. Blake related to him being second on a captain's exam to a nonresident." (ECF 294 at 9:4-8) The judge concluded therefore that such testimony did not exist. Had the judge provided a clear answer to the jury's

question, it is possible the jury would have determined that Blake and Savage met their burden in proving a pattern of harassment and retaliation.

The District Court's response to the jury's question was not only inaccurate and based on a misunderstanding of the evidence introduced at trial, but it also prejudiced Appellants and prevented the jury from having critical information during deliberations. The District Court abused its discretion in not providing the requested information to the jury, and such abuse was prejudicial. As such, this Court should remand this matter for a new trial.

## II. The District Court Erred by Failing to Give a Limiting Instruction to the Jury Regarding the Admission of the Civil Service Decisions.

### A. Standard of Review

The applicable standard of review for "properly preserved objections" to jury instructions in the First Circuit is whether the trial judge committed an abuse of discretion. *United States v. Lara*, 181 F. 3d. 183, 205 (1st Cir. 1999) (citing *United States v. DeStefano*, 59 F. 3d. 1, at 2-3, (1st Cir., 1995)).

### B. Argument

The District Court erred in failing to provide a limiting instruction to the jury regarding the admission of the Civil Service Commission decisions and the determinations reached within those decisions. This failure created confusion and

allowed Appellees to imply that those decisions undermined the credibility of Blake and Savage's discrimination claims.

Under Federal Rule of Civil Procedure 51, parties are permitted to request specific jury instructions. Fed. R. Civ. P. 51(A). A court's failure to provide the requested instruction may constitute reversible error. Fed. R. Civ. P. 51(d)(1). A court must instruct the jury correctly and adequately on controlling issues. *See Sullivan v. National Football League,* 34 F.3d 1091, 1107 (1st Cir.1994). But, a court need not accept a particular instruction if it does not accurately state the law. *See Jerlyn Yacht Sales, Inc. v. Roman Yacht Brokerage*, 950 F.2d 60, 68 (1st Cir.1991). Thus, even though the court is not obligated to give a particular requested instruction, "[i]f the request directs the court's attention to a point upon which an instruction to the jury would be helpful, the court's error in failing to charge may not be excused by technical defects in the request." 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2552 at 395–97 (1995); *see also Ouimette v. E.F. Hutton & Co.*, 740 F.2d 72, 76 (1st Cir.1984).

Further, under Federal Rule of Evidence 105, upon request, a court must restrict the evidence to its proper scope and provide appropriate instructions to the jury when the evidence was admitted for one purpose or against one party, but not the other. Fed. R. Evid. 105. As this Court has observed, "the potential for prejudice. . . [often] can be satisfactorily dispelled by appropriate curative

instructions," as "[j]urors are presumed to follow such instructions, except in extreme cases." *United States v. Richardson*, 421 F.3d 17, 41 (1st Cir. 2005). For instance, in *McDonough v. City of Quincy*, this Court found that the lower court's limiting instruction to the jury regarding information concerning a settlement entered into by the defendant was sufficient to cure any potential prejudice suffered. 452 F.3d 8, 20-21 (1st Cir. 2006).

Here, Appellants' counsel specifically requested the District Court provide a limiting instruction to the jury clarifying that the Civil Service Commission decisions did not address the issues of discriminatory harassment or retaliatory harassment. (ECF 293 at 6:4-8). However, the judge provided the following instruction:

> You have before you certain Civil Service Commission decisions concerning discipline imposed on Mr. Blake. While you may take them into consideration, it remains up to you whether the decision was retaliatory.

(ECF 293 at 122:23-123:2). This instruction was in no meaningful way "limiting" and did not highlight for the jury that the Commission did not consider Blake and Savage's issues of harassment or retaliation. What is more, such a limiting instruction was necessary because of Appellees' mischaracterization of the decisions, particularly in closing arguments. Specifically, Appellees argued "[t]he lack of credibility is indicated by the Civil Service and arbitration decisions[,]" and implied that somehow the decisions—which never considered Blake or Savage's

discrimination claims—undermined the merits of those claims now. (ECF 293 at 50:11). Consequently, the jury was left with the impression that the prior findings of the Commission were determinative of the central claims they were charged with deciding.

In failing to adopt Appellants' suggested instruction, the District Court allowed the defense to mislead the jury about the weight and importance of the decisions as they impacted the issues at trial. While the general instruction did leave it to the jury to determine whether the discipline imposed by the Civil Service Commission and an arbitrator was retaliatory, the instruction failed to address the specific risk of prejudice created by the Appellees' mischaracterization of a central issue in the trial. This failure disregarded the principles set forth by this Court in *McDonough*, and Fed. R. Evid. 105 and Fed R. Civ. Pro. 51.

Additionally, the absence of a limiting instruction also created an imbalance in the District Court's treatment of evidence. While the District Court provided a limiting instruction regarding the Appellants' MCAD and EEOC complaints, it did not provide a similar limiting instruction for the Commission decisions. This undermined the fairness of Appellants' trial.

At bottom, the District Court's failure to provide the requested limiting instruction allowed Appellees to mislead and confuse the jury and prejudiced Blake and Savage. This Court should reverse that error.

### III. The District Court Erred by Denying Appellants' Motion in Limine and by Failing to Give a Limiting Instruction to the Jury Regarding Appellees' First Amendment Defense.

#### A. Standard of Review

The applicable standard of review for "properly preserved objections" to jury instructions in the First Circuit is whether the trial judge committed an abuse of discretion. *United States v. Lara*, 181 F. 3d. 183, 205 (1st Cir. 1999) (citing *United States v. DeStefano*, 59 F. 3d. 1, at 2-3, (1st Cir., 1995)).

#### B. Argument

The District Court erroneously denied Appellants' motion in limine to exclude Appellees from arguing their offensive speech was protected by the First Amendment. The District Court further erred by failing to provide a limiting instruction to the jury concerning such a defense. This was an abuse of discretion.

"Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007). Still, however, those rights are not absolute. *Id.* "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.*

Because public employees "often occupy trusted positions in society[,] [w]hen they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." 547 U.S. at 419. Therefore, the "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id*. at 417. And, if a court finds an employee made statements that are within the protections of the First Amendment, the court must then "balance. . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ*., 391 U.S. 563, 568 (1968).

Courts have long rejected the argument that harassing and derogatory speech which creates a hostile work environment is protected within the purview of the First Amendment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (holding lewd and offensive remarks made to Faragher by her co-workers and supervisors created a hostile work environment and violated Title VII); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993) (finding sexist comments that created a discriminatorily abusive work environment violated Title VII); *Curran v. Cousins*, 509 F.3d 36, 50 (1st Cir. 2007) (declining to extend First Amendment protections to public employee's social media post that likened the police Sheriff to Hitler and

noting such statement served no purpose but to disrupt "harmony and creat[e] friction in working relationships" within the department);[1] *Pereira v. Commr. of Soc. Services*, 733 N.E.2d 112 (Mass. 2000) (determining an investigator's racist joke at a political event was not protected speech); *MacRae v. Mattos*, 106 F.4th 122 (1st Cir. 2024) (appeal pending) (holding a teacher's First Amendment rights in posting offensive social media posts did not outweigh the school's concern of disruption.).

Turning to the facts here, it is difficult to find any First Amendment value in protecting the disturbing and highly offensive social media posts made by Blake and Savage's coworkers and supervisors. Indeed, like the cases above, this speech was directly aimed at harassing Blake and Savage, creating a hostile work environment, and interfering with the regular operations of the Springfield Fire Department. These posts, made by public employees on not only their personal social media pages, but also public threads like "Springfield's Bravest Current and

[1] There are additionally a multitude of cases discussing a heightened interest in regulating the speech of certain government employees, such as police officers, given their position in the public. *See e.g., Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1293 (11th Cir.2000) (holding that the "heightened need for order, loyalty, morale and harmony" in a law enforcement agency affords it "more latitude in responding to the speech of its officers than other government employers"); *O'Donnell v. Barry*, 148 F.3d 1126, 1135 (D.C.Cir.1998) ("[B]ecause of the special degree of trust and discipline required in a police force there may be a stronger governmental interest in regulating the speech of police officers than in regulating the speech of other governmental employees."). The same can be said for firefighters, who like police officers, serve the public in a capacity that requires a degree of trust and competency.

Former[,]" were shockingly brazen in their racist and anti-Muslim rhetoric. ADD 2. The posts openly supported violence against these groups and some even threatened physical violence against Blake and Savage directly. Appellees cannot now turn around and claim the First Amendment shields this hateful speech from liability under Title VII.

Yet, this is the precise argument Appellees made, despite Fire Commissioner Calvi's testimony that the City had terminated employees for different social media posts. (ECF 297 at 160:17-161:5). Defense counsel, in his closing, was permitted to argue that, while he may find the posts "deeply, deeply offensive, someone else may say: That's my right to have political speech. That's my political belief." (ECF 293 at 32:18-21). And that "[w]e're all living through the experiment with social media colliding with the First Amendment colliding with hate speech." (ECF 293 at 34:21-24). By allowing Appellees' counsel to make the argument, or at the very least imply to the jury, that the social media posts were protected speech under the First Amendment, without giving a limiting instruction, the District Court prejudiced Blake and Savage.

Motions in limine are designed to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence—thus curbing the exact issues that arose in this case. *See e.g., Com. v. Lopez,* 420 N.E.2d 319, 322 (Mass. 1981). And, courts have broad discretion to grant such motions to ensure a fair trial and

prevent jury confusion. *See id.* (citing *Burrus v. Silhavy*, 155 Ind. App. 558, 560, 293 N.E.2d 794 (1973)). Evidence or arguments that misstate the law or introduce irrelevant issues are particularly disfavored. *See Com. v. Rollins*, 18 N.E.3d 670 (Mass. 2014) (noting that "[l]awyers shall not and must not misstate principles of law" during closing arguments, as such misstatements can improperly influence the jury and undermine the integrity of the trial process.).

Moreover, the Supreme Court of the United States has addressed issues where significant risks of prejudice remain when inadmissible evidence is presented to a jury despite a limiting instruction. In *Bruton v. United States,* for instance, the Court determined that even with a limiting instruction, certain evidence can still be unduly prejudicial because jurors may rely on powerfully incriminating evidence despite instructions to the contrary. 391 U.S. 123, 135-36 (1968). These principles underscore the necessity of clear jury instructions to prevent jurors from being misled by irrelevant—and frankly, just flatly wrong—defenses.

Not only was Appellees' First Amendment defense argument misleading, but it was also irrelevant to the claims at issue. Blake and Savage's claim of a hostile work environment and Appellees' failure to address discriminatory conduct had little to do with whether Appellees subjectively believed their comments were protected speech. In viewing the undisputed evidence in this case, there was simply

no reasonable valid First Amendment defense to a claim of discrimination under Title VII. Appellees' argument to the contrary only served to confuse the jury and detract from the validity of Blake and Savage's claims.

Unfortunately, this error was not harmless. The District Court abused its discretion by denying Blake and Savage's motion in limine to prevent Appellees from asserting this defense in the first place. But, the District Court further compounded that abuse by failing to provide a curative instruction to the jury. The confusion surrounding if the speech was protected under the First Amendment and whether the jury needed to consider such in deliberation, undoubtedly prejudiced Blake and Savage. This confusion diverted the jury's attention away from Appellees' failure to address these offensive posts and resolve the hostile work environment, and instead, made the case about whether these firefighters should be allowed to post these things at all, despite their obscenity.

Courts routinely exclude arguments that misstate the law or introduce irrelevant issues. Yet, when those things are unfortunately introduced, the court must provide an instruction to the jury limiting the consideration of such. Here, the District Court did neither. This Court should reverse.

## IV. The District Court Erred by Misstating the Standard of Supervisory Liability Under MGL Chapter 151B When Instructing the Jury.

### A. Standard of Review

In reviewing preserved challenges to jury instructions, this Court will

"consider de novo whether an instruction embodied an error of law, but [will] review for abuse of discretion whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." *United States v. Ackell*, 907 F.3d 67, 78 (1st Cir. 2018) (quoting *United States v. Gray*, 780 F.3d 458, 464 (1st Cir. 2015)).

**B. Argument**

The District Court failed to properly instruct the jury regarding the standard for supervisory liability under Massachusetts General Laws ("MGL") Chapter 151B. This constituted a significant legal error that undoubtedly prejudiced Blake and Savage's case.

i. <u>The Strict Liability Standard Set Forth in *College-Town* applies.</u>

MGL c. 151B imposes strict liability on employers for a hostile work environment created by supervisors. In *College-Town, Div. of Interco v. Massachusetts Comm. Against Discrimination*, our Supreme Court clarified that supervisory liability is not confined to direct supervisors of a plaintiff. 400 Mass. 156 (1987). Rather, liability arises from the authority conferred upon a supervisor by the employer, which enables the supervisor to create a hostile work environment. *Id.* The Court reasoned that harassment by a supervisor carries an implied threat of using supervisory powers, including refusal to protect employees from coworker harassment. *Id.* at 166. This case establishes that the critical factor

in determining supervisory liability under MGL Chapter 151B is the supervisor's ability to influence the terms and conditions of employment rather than their direct supervisory relationship with the plaintiff. *Id*. at 165-66. *See also Sauer v. Belfor USA Group, Inc*., 2016 U.S. Dist. Lexis 120781 (D. Mass.) (employer is liable for sexual harassment perpetrated by a supervisor, even if it is not the plaintiff's direct supervisor).

This reasoning is sound because harassment by a supervisor inherently carries an implied threat of leveraging their authority—whether through "discharge, work assignments, or failure to shield employees from coworker harassment." 400 Mass. at 166. It also ensures that liability is tied to the authority conferred upon the supervisor by the employer, which uniquely positions them to create a hostile work environment. This is particularly true in workplaces like the Springfield Fire Department, where every supervisor is a mandated reporter of harassment. By virtue of their reporting obligations and authority, supervisors at the Fire Department are entrusted with the responsibility to protect all employees from harassment, regardless of whether they directly supervise a particular individual. The framework set forth in *College-Town* underscores that broad authority to affect workplace conditions is precisely what triggers employer liability under Chapter 151B. As such, the focus must remain on the scope of the supervisor's power, not the technicalities of their reporting structure.

Here, the District Court's jury instruction stated:

> The City is also liable for discriminatory acts done by others where the supervisor knew or should have known about the discriminatory conduct, but failed to take prompt remedial action and did not take adequate steps to remedy the situation. As a result, when you are asked to consider whether the city is liable for the claims I am about to explain, you should consider the conduct engaged in by its supervisors.

(ECF 293 at 115:7-15). The jury instruction improperly conflated the legal standards for coworker harassment and supervisory harassment. The District Court fundamentally misrepresented the law under Chapter 151B, and in doing so, heightened the burden for Blake and Savage by requiring them to prove that the City of Springfield knew or should have known about the harassment and failed to act—an element that is irrelevant to the strict liability standard promulgated under the rule and reinforced by the Massachusetts Supreme Court. This misstatement of law not only undermined Appellants' ability to present their case but also diluted the protections afforded by Chapter 151B.

Blake and Savage were prejudiced by the District Court's incorrect instruction. To be sure, the erroneous jury instruction conflating the legal standards for coworker and supervisory harassment under MGL Chapter 151B created a significant risk of jury confusion. The jury was likely misled into believing that Appellants could only prevail if they demonstrated the City's actual or constructive knowledge of the harassment, thereby undermining their ability to hold the City

accountable for the hostile work environment created by supervisors. This confusion diluted the protections afforded by Chapter 151B, prejudiced Appellants' case, and warrants appellate review to ensure adherence to established legal principles.

ii. <u>Application of *College-Town* to this Case.</u>

The *College-Town* case clarifies that a supervisor need not have direct or actual supervisory authority over a plaintiff for the employer to be held liable. 400 Mass. at 165-66. Rather, the focus is on the authority granted to the supervisor and its potential to create a hostile work environment. *Id*.

At the Springfield Fire Department, supervisors were mandatory reporters of harassment and had a "duty to report" when they observed such harassment. They were, therefore, empowered to protect all employees from harassment. (Trial Tr. Day 5, 135:12-136:9). A supervisor's active involvement in harassing an employee he does not directly supervise is synonymous with failing to protect all employees from harassment. Additionally, the evidence introduced at trial demonstrated that several supervisors with the Springfield Fire Department posted derogatory posts on social media targeting African Americans and Muslims. There was substantial evidence introduced that supervisors, including Lieutenants Joseph Santamaria, Steve Balboni, Louis Gaston, and Michael Ireland, engaged in and failed to address harassment that contributed to a hostile work environment and they were not

disciplined for such. (ECF 289 at 125:10-127:20; ECF 296 at 62:15-63:3; ECF 297 at 122:9-16, 123:12-125:6, 125:10-130:4, 146:3-14, 150:24 -151:20). *See also* Trial Exhibits 4, 5, 6, 13, 14, 17).

Additionally, former Fire Commissioner Conant testified that supervisors were held to a higher standard because of their leadership roles and their responsibility to protect employees from harassment. (ECF 296 at 138:2-9). Likewise, Commissioner Calvi testified that supervisors are expected to model compliance with the Department's rules and regulations for their subordinates. (ECF 297 at 171:25-172:3). This testimony aligns with the principles articulated in *College-Town* that supervisors are held to stricter standards in matters of compliance and reporting.

Based on this evidence, Blake and Savage met their burden in establishing supervisor liability as defined under Chapter 151B and *College-Town*. The District Court's erroneous instruction, however, placed an additional burden on Blake and Savage that they were not required to prove. And, in doing so, confused the jury and impeded Blake and Savage's ability to successfully present their case. The District Court's imposition of the incorrect legal standard warrants reversal and a new trial with proper jury instructions that reflect the legal principles established in *College-Town*.

CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's entry of judgment and remand this case for further proceedings consistent with this Court's opinion.

Dated: February 28, 2025

Respectfully submitted,

/s/Arnold J. Lizana III
Arnold J. Lizana III
Law Office of Arnold J. Lizana III
444 A North Main Street, Suite 304
East Longmeadow, MA 01028
Tel./Fax: (877) 443-0999
alizana@attorneylizana.com

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
**Appeal No. No. 24-1720**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point.

*/s/ Arnold J. Lizana III*
Attorney for Plaintiff-Appellants

Dated: February 28, 2025

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
**Appeal No. No. 24-1720**

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically filed this Appellant's Brief with the Court using the CM/ECF system. I certify that the following parties or counsel are registered CM/ECF users and will receive service through the CM/ECF system:

EDWARD PIKULA
Special Counsel For
City Of Springfield
1350 Main Street – Suite 312
Springfield, MA 01103
Email: edward.pikula@outlook.com

LISA C. DESOUSA
Law Department, City of Springfield
1600 East Columbus Ave.
Springfield, MA 01103
413-886-5206
Email:
ldesousa@springfieldcityhall.com
***Attorneys for City of Springfield***

February 28, 2025

/s/Arnold J. Lizana III
Arnold J. Lizana III
Law Office of Arnold J. Lizana III P.C.
444 A North Main Street, Suite 304

East Longmeadow, MA 01028
Tel./Fax: (877) 443-0999
alizana@attorneylizana.com

# ADDENDUM

# TABLE OF CONTENTS

1. Final Judgment dated July 3, 2025 .................................... ADD 1
2. Social Media Posts Admitted .................................... .ADD 2
3. Jury Trial Exhibit List .................................... ADD 3

AO 450 (Rev. 11/11) Judgment in a Civil Action

**ADDENDUM 1**

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

MARC SAVAGE, et al.
*Plaintiff*
v.
CITY OF SPRINGFIELD, et al.
*Defendant*

Civil Action No. 18-cv-30164 (KAR)

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❒ the plaintiff *(name)* ________ recover from the defendant *(name)* ________ the amount of ________ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☑ the plaintiffs recover nothing, the action be dismissed on the merits, and the defendants *(name)* City of Springfield, Joseph Conant and Bernard J. Calvi recover costs from the plaintiffs *(name)* Marc Savage and Randolph Blake .

❒ other: .

This action was *(check one)*:

☑ tried by a jury with Magistrate Judge Katherine A. Robertson presiding, and the jury has rendered a verdict.

❒ tried by Judge ________ without a jury and the above decision was reached.

❒ decided by Judge ________ on a motion for .

Date: 7/03/2024

*CLERK OF COURT*

*Melissa M. Rivera*
*Melissa M. Rivera, Deputy Clerk*

ADDENDUM 2

PLAINTIFF
TRIAL EXHIBIT 2



PLAINTIFFS TRIAL EXHIBIT 3

**Brian Connors** shared **Christopher Senerote**'s **photo**.
Jun 17 at 9:23pm

**Christopher Senerote ▶ Donald Trump - Made in America**
Jun 9 at 11:54am



PLAINTIFFS TRIAL EXHIBIT 4

31 11:11

https://m.facebook.com/?_rdr 16



**Steve Balboni** shared **Greg Katz**'s **post**.

4 hrs ·




**Greg Katz** April 11 at 7:36am ·

**PLAINTIFFS TRIAL EXHIBIT 5**

8:44

Posts



**Michael Ireland**
7 hrs ·

I apologize for the length of this. I kept hearing dissenting voices so I had to address those dissenters.
Here is why I think racism in America is good... because people hate people that they don't know because of the color of their skin. Simple, to the point and wonderful. Of course there are people screaming that such a statement is equivalent to Hitlerism ( I love that I made that up) or barbarism and there is no place in a civilized society for this maddening hatred. To that I say... don't be so silly (said with a French accent).
I suppose I should explain. Well, it starts with simple psychology and history. Since the beginning of mankind 6,000 years ago (according to the Bible) or 7 billion years ago (according to everything else), there have been divisions. The Neanderthals clashed with the Homosapiens who had slightly less pronounced foreheads and eventually were forbidden to say the T word (Thin skull) for fear of offending them. As humans merged into one distinct species and they spread out into tribes they managed to develop hatreds of rivals. Perhaps one group stole a crop of the other during a drought or reneged on a "spear for daughter" trade, whatever the case may be the offending tribe was labeled as untrustworthy or unworthy. This was taught to the next generation who had no reference to believe otherwise and assumed (but called it fact) that the other tribe's son and daughters were as guilty as their fathers. Of course the offended tribe resented being labeled and so labeled the first tribe as "labelers" creating a permanent divide between the two neighboring tribes.

Write a comment...

PLAINTIFFS
TRIAL EXHIBIT 6

7:07

Louis Gaston



**Louis Gaston** shared **The Revolution**'s **photo**.
Jun 15 at 11:01am

**The Revolution**
Jun 14 at 1:10pm

Double standard much?
**The Revolution** (y)




Share

**PLAINTIFFS TRIAL EXHIBIT 7**

7:10

Brian Connors

17,441,536 views

3

Like Comment Share



**Brian Connors** shared **Tom Carbone**'s post.
Apr 9 at 11:38pm •




**Tom Carbone** with **Gloria F. Dale**.
Apr 9 at 11:11am •

~




4

Like Comment Share

PLAINTIFFS
TRIAL EXHIBIT 8



**Brian Connors** shared **Lizette Bianchi**'s post.
Mar 30 at 7:39am •



**Lizette Bianchi**
Mar 29 at 10:44pm •

Good question!




7

Like Comment Share



**Brian Connors** shared **Mike Brown**'s **photo**.
Mar 29 at 10:07pm •



**Mike Brown**
Oct 6, 2013 at 9:17am •

PLAINTIFFS
TRIAL EXHIBIT 9

Brian Connors



**Brian Connors** shared **Franklin Graham**'s post.
Mar 24 at 9:21am •



**Franklin Graham**
Mar 24 at 7:05am •

Why does Islam hate so much? It's because the Quran teaches its followers to hate. Jews, Christians and others are to be subdued so that Islam may "prevail over all religions." Read what a former Muslim has to say about it in **USA TODAY**. It's all in the final chapter of the Quran —"Kill or be killed in battle, and paradise awaits."



**The Quran's deadly role in inspiring Belgian slaughter: Column**
usatoday.com

1 Comment

Like Comment Share

**Brian Connors** shared **Donald J. Trump**'s post.

ABP 8:23

PLAINTIFFS TRIAL EXHIBIT 10

Search

2



**Brian Connors** shared **Americans Defending The 2nd**'s **photo**.

Dec 8 at 1:13pm •

**Americans Defending The 2nd**

Dec 7 at 10:00am •

**#MadDog**

Ghost-

**Americans Defending The 2nd**



LTE 3:29

PLAINTIFFS TRIAL EXHIBIT 11

**Brian Connors** shared **Richard Alan Kleszczynski**'s **post**.
November 21 at 6:58pm ·




**Richard Alan Kleszczynski** November 21 at 5:20pm ·

Like Comment Share

**Aaron Hyte and 1 other**

Write a comment...

Post

PLAINTIFFS
TRIAL EXHIBIT 12



PLAINTIFFS
TRIAL EXHIBIT 13

1 hr ·




**Bill Warner, Phd** March 11 at 7:09pm ·

Under Sharia all of this is allowed.

1

PLAINTIFFS TRIAL EXHIBIT 14

12:47:19

Search

**Steve Balboni** shared **Greg Katz**'s **post**.
May 17 at 6:52am

**Greg Katz**
May 15 at 9:12am

★★★ Let's Be Consistent... ★★★




Bruce Hawley and 6 others

Like Comment Share

**PLAINTIFFS TRIAL EXHIBIT 15**

Randy Home

3 people like this.

**Joe Huerta** It's not very Christian to preach hate last time I checked. The Muslims I met were some of the nicest people I've ever met, offering us bread and cheese when they barely had anything. Posting this is the same as being a "Black Lives Matter" protester that thinks all cops are killers.
Like · Reply · September 22 at 9:10am

**Brian Connors** it's not preaching hate it's telling the truth. I'm just pointing out what the Koran teaches.
Like · Reply · September 22 at 10:15am

View more replies

**Brian Connors**




Like · Reply · September 22 at 10:18am

**James Hall** Brian, here's something to consider: http://www.thegreatfiction.com/.../are-muslims-real-people/



**Are Muslims Real People?**
To clarify at the start, I think that the answer to this article's title is clearly yes. But if my social media feeds are any ...
THEGREATFICTION.COM

Like · Reply · September 22 at 12:24pm

**Brian Connors** Tux Hall what did you write? it didn't come up on my screen.
Like · Reply · September 22 at 3:52pm

**PLAINTIFFS TRIAL EXHIBIT 16**

6:58

Joe SantaMaria



**Joe SantaMaria** shared **Jeb Corliss**'s **photo**.

Jul 28, 2015 at 5:46pm •



**Jeb Corliss**

Jul 17, 2012 at 1:10am •

# RELIGIONS OF THE WORLD

| | |
|---|---|
| TAOISM: | Shit Happens |
| HINDUISM: | This Shit Happened Before |
| ISLAM: | If Shit Happens, Take A Hostage |
| BUDDHISM: | When Shit Happens Is It Really Shit ? |
| 7th DAY ADVENTIST: | Shit Happens On Saturday |
| PROTESTANTISM: | Shit Won't Happen If I Work Harder |
| CATHOLICISM: | If Shit Happens, I Deserve It |
| JEHOVAH'S WITNESS: | Knock, Knock, "Shit Happens" |
| JUDAISM: | Why Does Shit Always Happen To Me ? |
| HARE KRISHNA: | Shit Happens Rama Rama Ding Dong |
| ATHEISM: | No Shit |
| T. V. EVANGELISM: | Send More Shit |
| RASTAFARIANISM: | Let's Smoke This Shit |

**PLAINTIFFS TRIAL EXHIBIT 17**



Posts

**Blaq Pagan ▶ Springfields Bravest Current and Former**

1 minute ago ·

"Have you ever been beaten"(Vladimir Putin,2017)? This is what comes to mind when I think of two officers that were transferred to an island where they continue to reach out and fuck with people. I tried to behave, keep my mouth shut, mind my own business, but you two pussy's still want to play this game. One of you is too fucking retarded to use a computer so I know it had to be the apprentice that went and reported that someone didn't have his shirt on while out in the public. A 50 year old tattletail. Bottom line is the Sith will never rule the department and Savage Opress will never rule because he has severe mental and social deficits. You Balakay, obviously can't score high enough to get promoted so you keep trying to get people jammed up to make captain. These are the facts and If I were you, I'd be worried if anyone is going to have my back in a pinch. For example how hard are these guys going to search for me if I'm ever overcome by smoke or fire. "Have I alienated myself in the name of personal gain,"? Why we gotta keep doing this just let me put my hands on you so you can keep my fucking name out of your mouth.

Like Comment

Write a comment...

PLAINTIFFS TRIAL EXHIBIT 18

Brian Connors

**Brian Connors** shared **Tom Carbone**'s post.
Jun 14 at 7:05pm •

**Tom Carbone**
Jun 14 at 3:59pm •

These are the words that we never want to hear.




Aaron Hyte and 1 other

Like Comment Share

PLAINTIFFS
TRIAL EXHIBIT 19

9:34 AM 86%

Search in Springfields Bravest Cu...

ABOUT | DISCUSSION | PHOTOS | EVENTS | FILES

FROM NOTIFICATIONS

**Blaq Pagan**

1 hour ago •

"It's disturbing what I gross survey says you're not even close"(The Carter's, 2018). With all your test taking you still can't even make it out of the ghetto. I mean right in the middle of the shit. 40 years of a career and can't financially uplift yourself. And you macho Man, how do you manage an apparatus, when you can't manage a marriage. How many times did the Jehovah's kick you out. Your not going to make it to Paradise on Earth. What's the matter can't get right? Gloves is off!

2 Seen by +1

Like Comment

RECENT ACTIVITY

**Blaq Pagan**

Yesterday at 7:55 PM •

"Have you ever been beaten"(Vladimir Putin,2017)? This is what comes to mind when I think of two officers that were transferred to an island where they continue to reach out and fuck with people. I tried to behave, keep my mouth shut, mind my own business, but you two pussy's still want to play this

PLAINTIFFS TRIAL EXHIBIT 20

7:00

Brian Connors

**Brian Connors** shared **Right Wing News**'s **photo**.
Jun 16 at 7:48am •

Stand Up Speak Out Fight Back

**Right Wing News**
Jun 14 at 1:30am •




4

Like Comment Share

**Brian Connors** shared **Pamela Halloran**'s post.
Jun 16 at 6:26am •

**Pamela Halloran**
Jun 12 at 11:30am •

PLAINTIFFS
TRIAL EXHIBIT 3

PLAINTIFFS
TRIAL EXHIBIT 40

5:24

Search in SFD " Exclusive"..Members Only

**Xavier Cody**
28 mins ·

Most people don't understand my uncle. All that he asks is that you kneel before him. He will proclaim you warlord of all fire departments!



James Keaton  Seen by 10

Like  Comment

**Shawn Quinn**
1 hr · East Longmeadow, Massachusetts ·

I'm not going to release the amount I'll let **Brian J. Vigneault** take care of that, but this kid is a true solid committed

**PLAINTIFFS TRIAL EXHIBIT 43**

7:07

**Tom Morrow**
1 hr ·

Check out the new Ram "protestor edition "😉



AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

**ADDENDUM 2**

DISTRICT OF MASSACHUSETTS

Marc Savage, et al.

V.

City of Springfield, et al.

## EXHIBIT AND WITNESS LIST

Case Number: 18-cv-30164 (KAR)

| PRESIDING JUDGE | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| Katherine A. Robertson, U.S.M.J. | Arnold J. Lizana, III | Edward M. Pikula & Lisa C. DeSousa |
| TRIAL DATE (S) | COURT REPORTER | COURTROOM DEPUTY |
| 6/10/2024 - 6/25/2024 | Sarah Mubarek, et al. | Melissa M. Rivera |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | 6/11/2024 | | Yes | SFD Harassment Policy (ID. P. Ex 35) |
| 2 | | 6/11/2024 | | Yes | Muslim Family Values by Brian Connor (ID P. Ex. 1) |
| 3 | | 6/11/2024 | | Yes | Adullah young Muslim boy holding a shotgun - Brian Connors (ID P. Ex. 2) |
| 4 | | 6/11/2024 | | Yes | Quran Says to Kill Everyone Who Is Not Muslim (Steve Balboni) (ID P. Ex. 4) |
| 5 | | 6/11/2024 | | Yes | Racism in America is Good (Michael Ireland) (ID P. Ex. 3) HARD COPY |
| 6 | | 6/11/2024 | | Yes | Racist if you Speak Out Against Islam (ID. P. Ex. 5) |
| 7 | | 6/11/2024 | | Yes | I Never Owned Slaves...You never picked cotton...Get Over It (Brian Connors) (ID P. Ex. 6) |
| 8 | | 6/11/2024 | | Yes | Poor and Oppressed (Brian Connors) (ID P. Ex. 7) |
| 9 | | 6/11/2024 | | Yes | Quran Deadly Role in Inspiring Belgian Slaughter (Brian Connors) (ID P. Ex. 8) |
| 10 | | 6/11/2024 | | Yes | Hired by Trump to Exterminate Muslims (Brian Connors) (ID P. Ex. 9) |
| 11 | | 6/11/2024 | | Yes | All Lives Splatter (Brian Connors) (ID P. Ex. 10) |
| 12 | | 6/11/2024 | | Yes | Why Don't Muslims Stay in Their Countries? (Louis Gaston) (ID P. Ex. 11) |
| 13 | | 6/11/2024 | | Yes | Let's discuss what Islam offers (Steve Balboni) (ID P. Ex. 12) |
| 14 | | 6/11/2024 | | Yes | We should be removing Mosques (Steve Balboni) (ID P. Ex. 13) |
| 15 | | 6/11/2024 | | Yes | Standing Up Against Islam (Brian Connors) (ID P. Ex. 14) |
| 16 | | 6/11/2024 | | Yes | Religions of the World (Joe SantaMaria) (ID. P. Ex. 16) |
| 17 | | 6/11/2024 | | Yes | Blaq Pagan - Leave you to die in a fire (ID. P. Ex. 19) HARD COPY |
| 18 | | 6/11/2024 | | Yes | America 2050 - image of crowd (Brian Connors) (ID. P. Ex. 30) |
| 19 | | 6/11/2024 | | Yes | Jehovahs kick you out (Blaq Pagan) (ID. P. Ex. 31) |
| 20 | | 6/11/2024 | | Yes | Muslim massacres gays (Brian Connors) (ID P. Ex 32) |
| 21 | | 6/11/2024 | | Yes | SFD Promotions Policy (ID P. Ex. 36) |
| 22 | | 6/12/2024 | | Yes | Blake Complaint to Conant Re: Cody dated 6/14/2017 (ID. P. Ex. 79) |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

AO 187A (Rev. 7/87)

# EXHIBIT AND WITNESS LIST – CONTINUATION

| Marc Savage, et al. | vs. | City of Springfield, et al. | CASE NO. 18-cv-30164 (KAR) |
|---|---|---|---|

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 23 | | 6/12/2024 | | Yes | Blake Charge Re: Charges Bullying/ Harassment (ID. P. Ex. 76) |
| 24 | | 6/12/2024 | | Yes | Blake Complaint Charges Re: Residency (ID. P. Ex. 90) HARD COPY |
| 25 | | 6/12/2024 | | Yes | Blake Complaint Re: Suspension (ID. P. Ex. 92) |
| 26 | | 6/12/2024 | | Yes | Blake MCAD Complaint (ID. P. Ex. 93) REDACTED HARD COPY |
| 27 | | 6/12/2024 | | Yes | Blake Email to Calvi Re: Residency (ID. P. Ex. 97) HARD COPY |
| 28 | | 6/12/2024 | | Yes | Blake Email Request to Calvi for Paid Leave Due to Threats (ID. P. Ex. 100) |
| 29 | | 6/12/2024 | | Yes | Investigative Report by T. Gee and Exhibits (ID P. Ex. 112) |
| | 30 | 6/13/2024 | | Yes | Civil Service Decision 6-25-2015 (Blake) (ID D. Ex. F) |
| | 31 | 6/13/2024 | | Yes | Arbitration Decision 2-11-2019 (ID D. Ex. G) |
| | 32 | 6/13/2024 | | Yes | Civil Service Decision re Blake 4 Day Suspension from May 2024 (ID P. Ex. E) |
| 33 | | 6/13/2024 | | Yes | Tyrone Denson Letter (ID P. Ex. 152) |
| 34 | | 6/13/2024 | | Yes | Savage Complaint Re: Retaliation/Harrassment (ID P. Ex. 39) |
| 35 | | 6/13/2024 | | Yes | Savage MCAD Complaint (ID P. Ex. 45) |
| 36 | | 6/13/2024 | | Yes | Savage Amended MCAD Complaint (ID P. Ex. 53) HARD COPY |
| 37 | | 6/13/2024 | | Yes | Savage Second Amended MCAD Complaint (ID P. Ex. 65) |
| 38 | | 6/13/2024 | | Yes | Savage EEOC Complaint (ID P. Ex. 75) - REDACTED HARD COPY |
| 39 | | 6/14/2024 | | Yes | Savage Letter to Conant Re: Violation of City Ordinance (ID P. Ex. 61) |
| 40 | | 6/14/2024 | | Yes | Xerxes (Xavier Cody) (ID P. Ex. 20) |
| | 41 | 6/14/2024 | | Yes | Training Logs - HARD COPY |
| 42 | | 6/14/2024 | | Yes | Training Logs - HARD COPY |
| 43 | | 6/17/2024 | | Yes | New Ram Protestor Edition (Tom Morrow) HARD COPY |
| 44 | | 6/17/2024 | | Yes | SFD Anti-Bullying Policy (ID P. Ex. 42) |
| 45 | | 6/17/2024 | | Yes | Article 17 Policy (ID. P. Ex 42A) |
| 46 | | 6/17/2024 | | Yes | Residency Ordinance (ID. D. Ex. 1) |
| | | | | | |
| | | | | | |
| | | | | | |