**No. 24-1720**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

MARC SAVAGE and RANDOLPH BLAKE,

Plaintiffs - Appellants,

v.

CITY OF SPRINGFIELD, SPRINGFIELD FIRE DEPARTMENT,
JOSEPH CONANT, Former Springfield Fire Commissioner
And BERNARD J. CALVI, Springfield Fire Commissioner,

Defendants - Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

**BRIEF OF DEFENDANTS-APPELLEES CITY OF SPRINGFIELD, SPRINGFIELD FIRE DEPARTMENT,JOSEPH CONANT, Former Springfield Fire Commissioner and BERNARD J. CALVI, Springfield Fire Commissioner.**

---

Lisa Caryl deSousa, Esq.
BBO#1105149
City of Springfield Law Dept.
1600 E Columbus Ave.
Springfield, MA 01103
Direct: 413-886-5205
Fax: 413-750-2363
ldesousa@springfieldcityhall.com

Attorney for Joseph Conant

Edward M. Pikula, Esq. #10464
1441 Main St Ste 900
Springfield, MA 0110
Direct: 413-531-5004
Fax: 413-294-1979
edward.pikula@outlook.com

Attorney for City of Springfield, Springfield Fire Department, and Bernard J. Calvi

Date: March 31, 2025

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Defendants-Appellants state that the City of Springfield and Springfield Fire Department are a governmental corporation, and Joseph Conant and Bernard J. Calvi are all natural persons.

Date: March 31, 2025

/s/ Lisa C. deSousa
Lisa C. deSousa, Esq.

*Attorney for the Defendants-Appellants*

# TABLE OF CONTENTS

**Page**


Disclosure Statement……………………………………………………………i

Table of Contents………………………………………………………......ii

Table of Authorities…………………………………………………………..iv

Statement of Issue……………………………………………………………1

Statement of the Case…………………………………………………………1

Summary of the Argument……………………………………………………2

I. The trial court followed preferred practice and properly responded to the jury question during deliberations……………………………………...2

II. The trial court properly gave a limiting instruction regarding its admission of Civil Service Decisions…………………………………………...3

III. The record establishes that the Appellees fully comported with the Trial Court's ruling on Appellant's Motion In Limine relative to a First Amendment defense……………………………………………………4

IV. The trial court properly instructed the jury regarding supervisory liability under Massachusetts General Laws chapter 151B………………………….5

Argument..................................................................................................5

I. The trial court followed preferred practice and properly responded to the jury question during deliberations. ……………………………………....5

II. The trial court properly gave limiting instruction regarding the admission of Civil Service Decisions…………………………………………..11

III. The District Court Correctly Ruled On Appellants' Motion in Limine Relating to the First Amendment……………………………………..15

IV. The Court Correctly Instructed The Jury On Supervisory Liability under M.G.L. c.151B…………………………………………………..18

Conclusion………………………………………………………………...24

Certificate of Compliance……………………………………………………25

Certificate of Service……………………………………………………………..26

# TABLE OF AUTHORITIES

## STATUTES

Mass. General Laws, Chapter 151B

Mass. General Laws, Chapter 31 sec. 1(e)

## TABLE OF CASES

*9 Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, (1st Cir. 2003)……18

*Blake v. Pellegrino*, 329 F.3d 43 (1st Cir. 2003)……11

*Burnett v. Ocean Props.*, 987 F.3d 57 (1st Cir. 2021)……15

*College–Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 508 N.E.2d 587 (1987)……21

*Diaz v. City of Somerville*, 59 F.4th 24 (1st Cir., 2023)……13

*Morehouse v. Berkshire Gas Co.*, 989 F.Supp. 54 (D.Mass.1997)……22

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir., 1997)……5

*Noviello v. City of Bos.*, 398 F.3d 76 (1st Cir. 2005)……19,20

*Portugués-Santana v. Rekomdiv Int'l.*, 725 F.3d 17 (1st Cir. 2013)……15

*Smith v. Kmart Corp.*, 177 F.3d 19 (1st Cir. 1999)……14,15,17

*Rosemond v. Stop and Shop Supermarket Co.*, 456 F.Supp.2d 204 (D. Mass. 2006)……22

*Rozzetti v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 102069……17

*Saad v. Stanley Street Treatment & Resources, Inc.*, 1994 WL 846911

(D. Mass. May 20, 1994)……………………………………………………..22

*Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13 (1st Cir. 2018)…....15

*United States* v. *Almonte*, 594 F.2d 261 (1st Cir. 1979))…………………………9

*U.S. v. Argentine*, 814 F.2d 783 (1st Cir., 2004.)……………………………….9

*United States* v. *Aubin*, 961 F.2d 980, (1st Cir.), *cert. denied*,

506 U.S. 886, 121 L. Ed. 2d 180, 113 S. Ct. 248 (1992)…………………………9

*United States* v. *Bennett*, 75 F.3d 40, (1st Cir.), *cert. denied*,

136 L. Ed. 2d 79, 117 S. Ct. 130 (1996)……………………………………………..8

*United States v. Correia*, 55 F.4th 12 (1st Cir., 2022)……………………………11

*United States v. Garcia-Pastrana*, 584 F.3d 351, (1st Cir., 2009)……………….12

United States v. *Gonzalez-Velez*, 466 F.3d 27, (1st Cir., 2006)…………………..11

*United States v. Grullon*, 996 F.3d 21 (1st Cir., 2021)……………………………17

*United States v. Hernandez,* 146 F.3d 30 (1st Cir., 1998.)………………………..6

*United States v. Howard*, 687 F.3d 13M (1st Cir., 2012)…………………………11

*United States v. Meadows*, 571 F.3d 131, (1st Cir., 2009)……………………...11

*United States v. Rivera-Santiago*, 107 F.3d 960 (1997)……………………………8

*United States v. Sabetta, 373 F.3d 75* (1st Cir., 2004)…………………………..6

*United States v. Soler-Montalvo*, 44 F.4th 1, (1st Cir., 2022)………………………17

*United States v. Tavares*, 93 F.3d 10, (1st Cir., 1996.)………………………………9

*United States v. Velazquez-Fontanez,* 6 F. 4th 205 (1st Cir., 2021.)……………..9,10

*Velazquez-Perez v. Developers Diversified Realty Corp*., 753 F.3d 265 (1st Cir. 2014)……………………………………………………………………………21

*Zachar v. Lee*, 363 F.3d 70 (1st Cir., 2004)……………………………………….17

## STATEMENT OF THE ISSUES

I. Whether the trial court trial court followed preferred practice and properly responded to the jury question during deliberations.

II. Whether trial court properly gave a limiting instruction regarding its admission of Civil Service Decisions.

III. Whether the record on appeal establishes that the Appellees fully comported with the Trial Court's ruling on Appellant's Motion In Limine relative to a First Amendment defense.

IV. Whether the trial court properly instructed the jury regarding supervisory liability under Massachusetts General Laws chapter 151B.

## STATEMENT OF THE CASE

Appellees state that most of the "facts" alleged in the Appellants Statement of the Case are factually disputed and irrelevant to this appeal, and thus offer this addition.

Appellants brought this case alleging various theories against the City of Springfield and the current and former Superintendent of the Springfield Fire Department in connection with their employment by the Fire Department. Their

amended complaint alleged raced based discrimination and harassment in violation of Title VII, of the Civil Rights Act of 1964 (Count I), Race based discrimination in violation of M.G.L. c.151B (Count II), Violation of M.G.L. M.G.L. 31 sec. 1(e) (MA Civil Service Law), (Count III), Retaliation (Count IV), Negligent Supervision (Count V), Intentional Infliction of Emotional Distress (Count VI), and Breach of Contract (Count VII). *(APP 5)* By the time this matter reached trial the only remaining claims were for Retaliation, in violation of M.G.L. c. 151B. The retaliation alleged was both in adverse job actions, and for creation of a retaliatory hostile work environment.

Following 8 days of evidence, the jury returned a verdict for the Defendants.

## SUMMARY OF THE ARGUMENT

I. The trial court followed preferred practice and properly responded to the jury question during deliberations.

During deliberations the jury sent a question to the judge requesting information on when Blake had been ranked second for a promotional opportunity, with a non-resident in front of him in rankings. There were no transcripts available of the testimony offered during the trial. Counsel for the parties and the Court had differing recollections of what evidence, if any, came in on that issue. The Court answered the question by instructing the jury that their collective memory should control. She further reminded the jury that certain agency decisions that had been admitted into evidence, which might have referenced the events they were

questioning, could be used only as evidence that the complaint had been made, and not for the truth of the details within the decisions.

Under the circumstances, and with no transcript available, the Judge's reply to the Jury comported with the law and the preferred practice.

## II. The trial court properly gave a limiting instruction regarding its admission of Civil Service Decisions.

During the trial the Court admitted into evidence certain decisions rendered by the Civil Service Commission relating to complaints brought forth by Blake regarding discipline to which he had been subjected. The Court instructed the jury that while the decisions could be considered, it was up to them to determine whether the discipline had been retaliatory. Appellants argue the Court should have instructed the jury that the Civil Service Commission had not considered any issues of discrimination or retaliation.

The instruction given by the Court was proper, as it directed the jury to make its own determination on the crucial issues in this matter, i.e. whether the discipline had been meted out for retaliatory purposes.

Appellants also argue that counsel for the Appellees mislead the jury in closing argument by referring to the decisions. Appellants failed to object at the time of the closing, and failed to request additional instruction based upon the closing argument. Further, the Court instructed the jury appropriately that argument from counsel is not evidence and cannot be considered as such.

III. <u>The record establishes that the Appellees fully comported with the Trial Court's ruling on Appellant's Motion In Limine relative to a First Amendment defense;</u>

Appellants erroneously argue that the Appellees impermissibly raised a First Amendment Defense in this matter, i.e. arguing that the social media posts were protected by the First Amendment, thus shielding the Appellees from any liability for the posts. No such defense was proffered, no instructions regarding such were either sought or given, and the Appellees repeatedly acknowledged the offensive nature of the posts. The only mention of the First Amendment was in counsel's argument, highlighting that the decision of the Fire Department Superintendent to seek assistance from the Human Resources Department was reasonable, given the complexity of the issues presented, including any potential First Amendment concerns.

The Court had correctly ruled on the motion in limine filed by the Appellants, holding that in advance of any evidence going in on the issue she was not going to "constrain the city from saying we have to observe whatever rights our employees have under the First Amendment. This is precisely the argument made by Appellees' counsel. Appellants also failed to object at the time of the argument, or ask for any additional jury instruction on the issue of the First Amendment.

The Trial Court's disposition of the motion in limine was correct.

IV. The trial court properly instructed the jury regarding supervisory liability under Massachusetts General Laws chapter 151B.

The undisputed evidence adduced at trial established that the social media posts which Appellants allege caused a hostile work environment were not posted by anyone who acted as their direct supervisor. Accordingly, the Court correctly instructed the jury that the City's liability (as employer) was to be determined by whether any supervisory personnel were made aware of the posts, and failed to reasonably respond.

The instruction given comports with the law under M.G.L. c. 151B, the Massachusetts anti-discrimination statute.

## ARGUMENT

### I. The trial court followed preferred practice and properly responded to the jury question during deliberations.

*A. Standard of Review*

The First Circuit standard for reversal of a jury verdict due to improperly answering or failing to answer a jury question during deliberations hinges on whether the error was harmless. Ultimately, the burden of demonstrating that an error was harmful lies with the party asserting the error. In *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir., 1997), the court highlighted that the central question is whether the jury judgment was substantially swayed by the error, considering factors such as the centrality of the evidence and its prejudicial effect. In the present case, there was no error in handling the jury question as the trial court followed preferred practice.

*B. <u>Preferred Practice was followed by the trial court.</u>*

The preferred practice for handling a jury message includes reducing the note to writing, marking it as an exhibit, showing it to counsel, and giving counsel an opportunity to suggest an appropriate response *United States v. Sabetta*, *373 F.3d 75* (1st Cir., 2004). *United States v. Hernandez,* 146 F.3d 30 (1st Cir., 1998.) Here, as noted in the docket entries for the last day of trial, the written Jury Note was marked #2, read and answered. The transcript reflects the court making counsel aware outside the presence of the jury and provided all counsel an opportunity to respond.

> THE COURT: So I have a question, very specific factually, from the jurors and it's signed by Mr. Infante, who is juror number one and the foreperson. "What year did Blake become second on captain's exam to a nonresident," is the question. Was there evidence of that presented? *(APP 126, Entry 294 pp. 4-9)*[1]

Attorneys for the Appellees stated they did not believe such evidence was given to the jury, and Appellants' counsel asserted it was in evidence, while noting no specific date for the promotional opportunity was presented, but that a range of time was presented from 2016 -2018. [2] Importantly here, there were no transcripts available for review. *(APP 126, Entry 294 p. 7:8-12)* Unlike cases where a party

---

[1] Appellants attempt to argue that this was error, and that such error inured to the detriment of *both* Appellants. (Appellant's Brief p. 9) This is a misstatement, as the question only involved Plaintiff Blake.

[2] MR. LIZANA: Your Honor, it was a list that was active for two years, 2016 to '18. He was second to I think it was Lieutenant Kneeland at the time. Lieutenant Kneeland was a nonresident. (Trial Tr. – Day 9, p. 5, lines 4-9).

or counsel was "kept in the dark" regarding the existence or content of the jury's note, counsel was present at the time the note was read, had the ability to advocate and object before the jury was called into the courtroom, and the judge responded to the note with supplemental instructions.

The trial court, after reviewing the judge's own notes stated she would instruct the jury that it was their memory that controlled. *(APP 126, Entry 294 pp. 7-8)*

> THE COURT: My notes don't show any such question, and I did take notes of Mr. Blake's testimony in a fair degree of detail. My concern is that they're relying on contents -- my concern is that this comes from the contents of one of the complaints which we have told them not to consider for the truth of the matter asserted. So my response to the question -- again, I've looked at my notes pretty carefully, and I've taken careful notes of Mr. Blake's testimony, and my notes don't show any testimony by Mr. Blake related to him being second on a captain's exam to a nonresident. So I think I'm going to say that their memory would have to control, and I'm inclined to remind them of the limiting instruction that they're not to accept the contents of any of the complaints for their truth. Because I do have a concern that this specific question could arise from the contents either of the MCAD complaints which were admitted into evidence or of the internal complaints which we had instructed the jury are not to come in for their truth.

The jury was called into the courtroom, and the judge did what she said she would do. *(APP 126, Entry 294, pp. 8-10)*

> THE COURT: Please sit. So I have a question from the jurors, which is what year did Blake become second on captain's exam to a nonresident, and it was signed by juror number one, the foreperson. Your memory of that

> evidence is going to have to control. After conferring with the attorneys, I'm just going to remind the parties -- I don't know the source of the question, but I'm going to remind the parties of the court's limiting instruction that the charges, the MCAD charges and the internal complaints made by the plaintiffs, Marc Savage and Randolph Blake, came in for the limited purpose of showing that the city was informed about the complaints and the basis of the complaints that they with are make were making but not for the truth of the matters asserted in those complaints. So that is the only answer that the court can give to the parties. I mean to the jurors. I apologize. Thank you all very much.
> (Jury exits courtroom.)

Under the circumstances the Court confronted, it's response was appropriate. Counsel for the parties and the Court all had different recollections of what testimony had come in on the issue. The Court could not instruct the jury in the manner suggested by Appellants' counsel, as it would have improperly invaded the jury's fact-finding role, and such error could not be found harmless. See *United States v. Rivera-Santiago*, 107 F.3d 960 (1997).

The district court may, at its discretion, reread testimony where the jury makes a request to have specific testimony reread, *see*, *e.g.*, *United States* v. *Bennett*, 75 F.3d 40, 46 (1st Cir.), *cert. denied*, 136 L. Ed. 2d 79, 117 S. Ct. 130 (1996); *United States* v. *Aubin*, 961 F.2d 980, 983-84 (1st Cir.), *cert. denied*, 506 U.S. 886, 121 L. Ed. 2d 180, 113 S. Ct. 248 (1992). As noted, that was not possible here, nor did the jury request specific testimony to be reread. The First Circuit has noted that the culling of testimony in response to a jury's open-ended question may, "in effect,

make the court a finder of fact," *see Aubin*, 961 F.2d at 983 (quoting *United States* v. *Almonte*, 594 F.2d 261, 265 (1st Cir. 1979)), and have found constitutional error where a district court's answer to a jury's factual question had the effect of mandating that the jury reach a conclusion on a particular issue. *U.S. v Argentine*, 814 F.2d 783, at 787-88 (1st Cir., 2004.)

Appellants' counsel claimed at trial he recalled Blake testifying regarding being 2nd on the list to a non-resident, and references in his brief that he found the specific testimony the jury wanted reread, i.e. a portion of Blake's testimony from the first day of trial. In fact, both testimony Appellants' counsel referenced during discussion of the jury note at trial as well as in his brief refers to a range of dates, and references a non-resident witness, Lt. Kneeland.

Contrary to the arguments of the Appellants, in the 1st Circuit, a judge is not required to consult the testimony in the transcript if a jury asks a question about testimony. The decision to provide trial transcripts or reread testimony to the jury is within the discretion of the trial judge. The judge must consider factors such as the reasonableness of the request, the ease or difficulty of compliance, any physical or logistical impairments, and the time required and what is likely to be gained or lost by fulfilling the request. *United States v. Tavares*, 93 F.3d 10, 14(1st Cir., 1996.) Similarly, in *United States v. Velazquez-Fontanez*, ,the court noted that the district court did not abuse its discretion by refusing to provide transcripts, emphasizing that

the jury should rely on their collective memory of the testimonies. *United States v. Velazquez-Fontanez,* 6 F.4th 205, 227-28 (1st Cir., 2021.) Put another way, while a judge has the discretion to consult the testimony in the transcript, it is not a mandatory requirement, and the judge's decision will be reviewed for abuse of discretion. Id.

Appellants' claim the court erred in determining that no evidence existed to answer their question, stating, "we don't give them evidence that they didn't get during the trial. So if there was no such evidence entered while the case was open, we do not tell them the answer to that question now." First, the court made no such determination, but, rather was acknowledging that there was a difference in recollecting whether such evidence had been introduced. *(APP 126, Entry 294 6:9-18)* Moreover, those comments were outside of the jury's presence, and thus beyond doubt harmless.

For the first time in this appeal, Appellants argue the Judge should have reviewed audio recording of the testimony. For all the reasons set out above, such request, even if preserved (which it was not) would be solely within the Court's discretion. The time required to cull through multiple days of testimony by listening to audio records would clearly have been an unreasonable and burdensome task.

Although it may be possible for a harmful error to occur even when counsel has an opportunity to object, in this case it is clear that there was no such error. Citing

*Blake v. Pellegrino*, 329 F.3d 43, 47 (1st Cir. 2003), Appellants' contention that the Court's response to the question deprived the jury of critical evidence misses the mark. *(APP 126, Entry 294 10:17-18)* In *Blake* the trial judge had caused evidence to be redacted from a death certificate. This is wholly dissimilar to the actions of the Court here, where the judge correctly instructed the jury that their memory was to control, and reminded them of the limited purpose of some documents, which may have touched upon the question asked.

There was no error in the Trial Court's response.

## II. The trial court properly gave limiting instruction regarding the admission of Civil Service Decisions

### A. <u>*Standard of Review:*</u>

The standard for reviewing properly preserved objections in the First Circuit varies depending on the nature of the objection. Generally, preserved objections to jury instructions and verdict forms are reviewed de novo, i.e. considers the matter anew, giving no deference to the trial court's decision U*nited States v. Gonzalez-Velez*, 466 F.3d 27, *United States v. Meadows*, 571 F.3d 131, 145-46 (1st Cir., 2009); *United States v. Howard*, 687 F.3d 13, 18 (1st Cir., 2012.) Specifically, preserved objections to the substance of jury instructions, such as whether they conveyed the essence of the applicable law, are reviewed de novo *United States v. Correia*, 55 F.4th 12, 41 (1st Cir., 2022). However, preserved objections to the wording and form

of instructions are reviewed for abuse of discretion. Id; see also *United States v. Garcia-Pastrana*, 584 F.3d 351, 389(1st Cir., 2009.)

### B. *The Instruction to The Jury Comported With The Law and Facts*

Appellants object to so much of the judge's instructions to the jury as it relates to certain civil service decisions which had been admitted into evidence. The Court instructed the jury *(APP 126, Entry 293 p. 6:4-8)*

> You have before you certain Civil Service Commission decisions concerning discipline imposed on Mr. Blake. While you may take them into consideration, it remains up to you whether the decision was retaliatory.

Appellants' counsel objected to the proposed instruction, stating he wanted the instruction to "go further and inform the jury that the Civil Service decision did not address the issue of discriminatory harassment or retaliatory harassment." On appeal Appellants argue the requested additional language was especially important since counsel for the Appellees had referred to the decisions in closing argument. (APP 125, Entry 291 p. 54:1-56:6)

First, the instruction given by the Court on the effect to be given to the Civil Service decisions was proper. The Court admitted the actual decisions from the Civil Service Commission, rather than limiting it to mere testimony, because the Appellants "opened the door" to their admission due to repeatedly referencing the decisions, and more specifically arguing that the decisions of the Civil Service

commission were both factually and legally incorrect. The Court advised counsel for the Appellants that he was risking the decisions being admitted, but he persisted in the line of questioning.

After the decisions were admitted, counsel for the Appellants objected and the Court overruled the objection, while explaining her ruling. Specifically:

> "THE COURT: You are within the scope of the cross, but you are opening the door in my view. There are two problems with this. You are essentially saying that the discipline imposed was retaliatory. But *Diaz v. Somerville*, which is a First Circuit decision, a recent decision, holds that a Civil Service ruling, as long as it addresses the allegation, is binding and preclusive. It has a preclusive effect. *Diaz v. Somerville*, a First Circuit decision under Massachusetts law, a Civil Service decision is preclusive and binding on a claim.
> MR. LIZANA: Your Honor, are you saying it precludes him from being able to explain his point of view?
> THE COURT: It's binding. It is in fact preclusive.
> MR. LIZANA: Your Honor, I disagree. The Civil Service mentions political bias or personal bias. Nothing in any of the Civil Service decisions about discrimination. This is a discrimination case. This is the forum we asked to have the opportunity to speak up about discrimination, and that is the law, your Honor. He cannot be muffled from giving evidence about discrimination.
> THE COURT: That's fine, but this is coming in as evidence, and the Court is going to consider instructing in line with *Diaz*.

The reference the Court made was to *Diaz v. City of Somerville*, 59 F.4th 24 (1st Cir., 2023), which held that administrative decisions arising out of proceedings before the civil service commission are granted preclusive effect as to all issues

litigated in the administrative matter. In this case, that would preclude the Appellants from relitigating the appropriateness for the discipline.

Incorrectly, counsel for the Appellants asserted that "this is a discrimination case", and thus the administrative decisions could not preclude litigation of issues of discrimination. As noted above, however, prior to the trial the Appellants had abandoned their discrimination claims of disparate impact and unequal treatment, leaving only the issue of retaliatory conduct to be determined in the matter. The Court specifically advised the jury that the issue of whether the discipline meted out was retaliatory was for them to decide. There was no error in the Court's ruling.

Appellants attempt now to raise the issue of references to the decisions in closing arguments by Appellees' counsel as mandating a further limiting instruction. The Appellants' failed to object at the time of the closing arguments, and ask for a limiting instruction or additional jury instructions at that time. When a party argues for a new trial based on alleged errors that were not raised or objected to during trial, such alleged errors are reviewed under the deferential "plain error" standard. *Smith v. Kmart Corp*., 177 F.3d 19, 25-26 (1st Cir. 1999). "Under plain error review, we will consider a forfeited objection only if: (1) an error was committed; (2) the error was "plain" (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice." *Id*. Prejudice under the third prong requires "a reasonable probability that,

but for the alleged error, the verdict would have been different." *Burnett v. Ocean Props.*, 987 F.3d 57, 71 (1st Cir. 2021) (citing *Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13, 19 (1st Cir. 2018)). "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault ...." *Smith*, 177 F.3d at 26. (internal citation omitted). "To merit reversal, the error must have resulted in a miscarriage of justice or seriously affected the fairness, integrity or public reputation of the judicial proceedings." *See Portugués-Santana v. Rekomdiv Int'l.*, 725 F.3d 17, 26 (1st Cir. 2013) ("[I]mproper closing arguments are typically harmless if the judge provides a curative instruction that counsel's argument is not evidence."). That exact instruction was given by the Court in this case. To the extent the argument was improper (which it was not), any error was harmless given the Court's clear instruction on the effect of argument by counsel.

## III. The District Court Correctly Ruled On Appellants' Motion in Limine Relating to the First Amendment

Appellants filed a motion in limine *(APP 122, entry 193)* in which they requested Appellees be precluded from arguing or offering "Defendants' anticipated First Amendment defense". After the opening arguments, Appellants pressed the motion. The Court noted that it was premature to rule upon evidence that had not been offered, but they were not going to "constrain the city from saying we have to observe whatever rights our employees have under the First Amendment". *(APP*

*123, Entry 289 p. 64; p. 104:10-20)* The Court's ruling at that time was expressly conditional.

Contrary to the assertions now made by Appellants, Appellees did not offer a first amendment defense, i.e. they did not argue that the First Amendment prevented them from investigating the posts complained of, or from disciplining officers under appropriate circumstances for inappropriate posts. In fact the only mention of the First Amendment was by counsel, in closing argument. *(APP 126, Entry 293 pp. 32-33)* Counsel argues that Defendant Conant's actions in turning to the Human Relations Department for guidance was reasonable, given the complexity of the issues involved. Specifically, in closing argument Conant's attorney states:

> "Joe Conant testified that when they were brought to his attention, he knew that this was a complex issue. It's a complicated area. There's a lot of competing issues that come into play when you start to look at people's private posts on social media. Things that I may find deeply, deeply offensive, someone else may say: That's my right to have political speech. That's my political belief. Things that I might find offensive, people might say: That's part of my religion and I have a right to believe those things. It's a complicated area for all of us as we navigate the new world of social media. So Joe Conant did the responsible thing. He reached out to the HR department and he said: I need some help. Don't know what to do. These are offensive posts. I see that they're offensive. He told you from that stand that he himself found those posts deeply offensive and concerning, and he didn't know exactly how to handle it."

As a result of his reaching out to HR, Attorney Talia Gee conducted an investigation. She testified, and her report of that investigation was entered into evidence. At no time did Attorney Gee, or anyone else state that the posts complained of were beyond the scope of discipline because of the First Amendment. There was no reason for the Court to take any further action on Appellants' motion.

Moreover, after the closing argument set out above Appellants did not object, did not renew their motion in limine, did not request a limiting instruction and did not ask for any First Amendment jury instruction. The first time they raised the issue is in this appeal. As noted above, when a party argues for a new trial based on alleged errors that were not raised or objected to during trial, such alleged errors are reviewed under the deferential "plain error" standard. *Smith at* 25-2. Since the Court's ruling on the motion in limine was conditioned upon whatever happened in the course of the trial, more was required of the Appellants to press the issue now. Where the court makes a definitive and unconditional ruling on the motion in limine, the issue is preserved for appeal without the need for further action at trial. *Zachar v. Lee*, 363 F.3d 70, 76 (1st cir., 2004); *United States v. Soler-Montalvo,* 44 F.4th 1, (1st Cir., 2022). Where, as here, the court's ruling on the motion in limine is provisional, conditional, or tentative, the party must renew the objection at trial to preserve the issue for appeal. *Rozzetti v. Ford Motor Co*., 2020 U.S. Dist. LEXIS 102069,; *Soler-Montalvo,* supra, at 1, *United States v. Grullon*, 996 F.3d 21, 30-31

(1st Cir., 2021). This requirement ensures that the trial judge has an opportunity to reconsider the ruling in the context of the actual trial. Id. The trial court properly instructed the jury regarding supervisory liability under Massachusetts General Laws chapter 151B.

## IV. The Court Correctly Instructed The Jury On Supervisory Liability under M.G.L. c.151B.

Appellants are arguing that the instruction given by the trial court relative to liability for the employer under M.G.L. c.151B was improper. An improper jury instruction constitutes "reversible error only if the requested instruction was (1) incorrect as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.'" *9 Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co*., 295 F.3d 68, 76 (1st Cir. 2003). The instruction given by the trial court here is correct as a matter of law.

The challenged instruction given by the Court was:

> The City is also liable for discriminatory acts done by others where the supervisor knew or should have known about the discriminatory conduct, but failed to take prompt remedial action and did not take adequate steps to remedy the situation. As a result, when you are asked to consider whether the city is liable for the claims I am about to explain, you should consider the conduct engaged in by its supervisors.

*(APP 126, Entry 293 115:7-15)*

The Court did not, as alleged by the Appellants, conflate the standard for co-worker created hostile environment with that of a supervisor harassing his/her underling. Rather, since it was undisputed that none of the posts were made by either of the Appellant's supervisors, she correctly instructed the jury on any supervisory liability under the facts of this case.

Under state law (as is also true with Federal law) different standards apply to establish employer liability for a hostile work environment (including a retaliatory hostile work environment), depending on whether the discriminator is a supervisor or a co-worker of the victim. If the employee's supervisor is responsible for creating a hostile work environment, the employer is generally liable for the misconduct. *Noviello v. City of Bos.*, 398 F.3d 76, 94-95 (1st Cir. 2005). If a co-worker creates the hostile environment more must be shown. As this Court has stated:

> "When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment, Title VII and chapter 151B seem essentially coterminous as they relate to employer liability. Notwithstanding the absence of a controlling Supreme Court precedent, several federal courts, including this court, have held that, in such situations, an employer can only be liable if the harassment is causally connected to some negligence on the employer's part. *See, e.g., Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir.2004); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir.2003); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir.2002).

> Typically, this involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it. *See Crowley*, 303 F.3d at 401. Similarly, under chapter 151B, employer liability for coworker harassment requires a showing that the employer knew or should have known about the harassment, yet failed to halt it. *Messina v. Araserve, Inc.*, 906 F.Supp. 34, 37–38 (D.Mass.1995) (discussing Massachusetts law); *College–Town*, 508 N.E.2d at 593."

*Noviello v. City of Boston*, 398 F.3d 76, 95 (1st Cir, 2005). See also *Forsythe v. Wayfair Inc.*, No. 21-1095, 2022 WL 592888, at *3 (1st Cir. 2022).

The Appellants misapprehend the term supervisor. The Appellants urge this Court to determine that being anyone's supervisor will make the employer vicariously liable for the harassing conduct. In this case the offensive social media posts were alleged to have caused a retaliatory hostile work environment. Those posts were attributed to various current or former employees of the Springfield Fire Department. While some of the posters were technically "supervisors", none of them were either of the Appellants' supervisors. This interpretation has been expressly rejected by this Court:

> "In *Noviello v. Boston*, 398 F.3d 76 (1st Cir.2005), we held that the "key to determining supervisory status is the degree of authority possessed by the putative supervisor." *Id.* at 95. The extent of a worker's authority is determined not by "nomenclature," but rather by an examination of "actual authority." *Id.* at 96. And the relevant authority "primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." *Id.*

> (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir.1998)).

*Velazquez-Perez v. Developers Diversified Realty Corp*., 753 F.3d 265, 271 (1st Cir. 2014.)

Appellants argue that the Supreme Judicial Court of Massachusetts interpreted M.G.L. c.151B as imposing vicarious liability (mistermed by them as "strict liability") on employer's whenever the harasser was a supervisor, regardless of their position in relation to the claimant. *College–Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 508 N.E.2d 587 (1987). They have misunderstood the import of the distinction made in *College-Town.* The claimant alleged her supervisor created a sexually hostile work environment. *Id* at 589. College-Town argued it should only be found responsible in two circumstances, i.e. if a supervisor sexually harasses an employee *in exercising* the power to hire, fire, or determine compensation and promotion, or (2) the employer is aware of sexual harassment in the workplace, whether caused by supervisors, coworkers, or customers, and fails to take adequate steps to remedy the situation. Id at 591 (emphasis added.) The SJC rejected this limitation, holding

> "(H)arassment by a supervisor carries an implied threat that the supervisor will punish resistance through exercising supervisory powers, which may range from discharge to assignment of work, particularly exacting scrutiny, or refusal to protect the employee from

> coworker harassment. Quid pro quo harassment may be easier to identify as an abuse of the authority vested in a supervisor because of the effect on tangible job conditions, but it does not define the limit of a supervisor's authority. Although coworkers or even outsiders may also be capable of creating a sexually harassing work environment, it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment."

Id at 593.

The interpretation urged by Appellants has been rejected previously. In *Saad v. Stanley Street Treatment & Resources, Inc*., 1994 WL 846911 (D. Mass. May 20, 1994), District Judge Douglas Woodlock set forth that in order for a Plaintiff to set forth a valid claim, the Plaintiff must establish that it was a supervisor harassing his or her own subordinate. Here, the alleged See also *Morehouse v. Berkshire Gas Co*., 989 F.Supp. 54, 64 (D.Mass.1997); *Messina v. Araserve, Inc*., 906 F.Supp. 34, 37 (D.Mass.1995) (noting that the touchstone question is "whether [the harasser] exercised supervisory authority over [the plaintiff]"). An employer defendant may not be held per se liable under chapter 151 B for any harassment which may have been created by a supervisor without direct supervisory powers over the Plaintiffs. *Rosemond v. Stop and Shop Supermarket Co*., 456 F.Supp.2d 204 (2006).

Since none of the social media posts were created by anyone with supervisory authority over the Appellants, the instruction given by this Court is correct as a matter of law.

## CONCLUSION

Appellants have failed to identify any errors in the conduct of the trial in this matter justifying setting aside the jury's verdict. Accordingly Appellees respectfully request this Court deny the Appellants appeal.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 5632 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 31, 2025

/s/ Lisa C. deSousa
Lisa C. deSousa
*Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on March 31, 2025.

Dated: March 31, 2025

/s/ Lisa C. deSousa
Lisa C. deSousa
*Attorneys for Defendants-Appellants*