# United States Court of Appeals
# For the First Circuit

No. 24-1720

MARC SAVAGE; RANDOLPH BLAKE,
Plaintiffs - Appellants,

v.

CITY OF SPRINGFIELD; SPRINGFIELD FIRE DEPARTMENT; JOSEPH CONANT, Former Springfield Fire Commissioner; BERNARD J. CALVI, Springfield Fire Commissioner,
Defendants - Appellees.

**REPLY BRIEF OF APPELLANT**

April 21, 2025.

Arnold J. Lizana III
Law Office of Arnold J. Lizana III P.C.
444 A North Main Street, Suite 304
East Longmeadow, MA 01028
Telephone (877) 443-0999
Attorney for Appellants Marc Savage and Randolph Blake

# TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The District Abused its Discretion by Failing to Properly Answer the Jury's Question

II. The District Court's Instruction on the Civil Service Decisions Was Inadequate and Prejudicial

III. Appellees Improperly Suggested that Harassing Speech was Protected by the First Amendment

IV. The Jury was Improperly Instructed on Supervisory Liability Under Chapter 151B

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

*College-Town, Div. of Interco v. Massachusetts Comm. Against Discrimination*, 400 Mass. 156 (1987)....................10,11

*Curran v. Cousins*, 509 F.3d 36 (1st Cir. 2007)....................8

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)....................8

*McDonough v. City of Quincy*, 452 F.3d 8 (1st Cir. 2006)....................8

*Noviello v. City of Bos.,* 398 F.3d 76 (1st Cir. 2005)....................11

*Pelletier v. Town of Somerset,* 458 Mass. 504 (Mass 2010)....................10

*Sauer v. Belfor USA Group, Inc.,* 205 F. Supp. 3d 209 (D. Mass. 2016)....................10

*United States v. Velazquez-Fontanez,* 6 F.4th 205 (1st Cir. 2021)....................6

*White v. New Hampshire Dep't of Corr.,* 221 F.3d 254 (1st Cir. 2000)....................10

**<u>Statutes & Rules</u>**

Fed. R. Evid. 105....................8

## INTRODUCTION

Appellees attempt to recast the trial below as free of reversible error, but their arguments fail to address the harm inflicted on Appellants through the District Court's mishandling of pivotal evidentiary issues and erroneous jury instructions. Rather than address the substance of the harms raised, Appellees offer procedural defenses and mischaracterize the factual and legal record. This Court should not be swayed.

At its heart, this case involves well-documented patterns of racial and religious hostility, retaliatory conduct, and administrative failures by the Springfield Fire Department. Yet, the Direct Court: (1) declined to answer a critical jury question that could have supported Appellants' retaliation claim; (2) failed to provide a limiting instruction on the Civil Service Commission decisions, allowing Appellees to misrepresent those findings; (3) permitted improper First Amendment arguments suggesting harassment was constitutionally protected; and (4) misstated the standard for supervisory liability under M.G.L. c. 151B, confusing the jury.

Appellees' brief does not meaningfully dispute that these errors occurred or that they substantially affected the jury's verdict. Because the trial was marred by legal missteps that prejudiced Appellants' ability to fairly present their claims, this Court should reverse.

## ARGUMENT

### I. The District Court Abused its Discretion by Failing to Properly Answer the Jury's Question.

The District court declined to answer the jury's question when there was a clear answer in the record favoring Appellants. (*See* ECF 289 at 184:10-14). Appellees argue that the trial court "followed preferred practice" by instructing the jury to rely on their memory regarding when Blake was second on the promotional list. Brief of Appellee ("Opposition") at 6. But, this argument ignores that the District Court had the means to verify whether the evidence existed—and declined to do so. Contrary to Appellees' claim, this was not a situation where the District Court had no way to check the record. The judge explicitly stated that she relied solely on her own notes, despite counsel's repeated reminders of the relevant trial testimony (ECF 294 at 5–9). And, Appellees' argument that the judge would have had to "cull through multiple days of testimony by listening to audio records" is a complete misrepresentation. (Opp. at 10). As Appellees acknowledged, Appellants' counsel identified "the specific testimony the jury wanted reread, i.e. a portion of Blake's testimony from the first day of trial." (Opp. at 9). Thus, as Appellees seem to admit, only a review of that section of the audio would have been needed.

As shown in the trial transcript, Blake testified that he was second on the list behind a non-resident from 2016 to 2018. (ECF 289 at 184:10–20). Blake's testimony was particularly notable because the District Court asked the court

reporter to read out loud the question posed to Blake regarding this matter. In response, Blake testified, "[t]he opportunity was for a promotional captaincy, which ended I believe it was in 2018. There was one position. I was number two. The person, individual was a nonresident. His name was Lieutenant Michael Kneeland." (ECF 289 at 184:10-14). When Appellees objected to this line of questioning, the District Court overruled the objection, stating, “I'm going to overrule the objection, permit him to testify. Is it his view, if the residency ordinance had been enforced according to his understanding of it, would he have been number one on the list. I think that's the question.” (ECF 289 at 185:11-16).

This evidence was critical to demonstrating that Blake was bypassed in violation of city residency policies, a key adverse action supporting his retaliation claim. The District Court’s refusal to confirm this evidence and clarify for the jury constituted an abuse of discretion. This error was not harmless: it concerned a core factual issue that may well have tipped the scales in favor of Blake had the jury been reminded of his unrebutted testimony.

Appellees’ reliance on *United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021) is misplaced. That case dealt with a jury request to rehear testimony, not a question about whether a specific fact was introduced at all. Here, the District Court gave the impression that no such evidence existed when in fact it did. This confusion, caused by the District Court’s failure to verify a central piece of

testimony, compromised Appellants' right to a fair trial. When a jury expresses confusion or asks specific questions, the judge has a responsibility to provide clarification to ensure the jury can make an informed decision. The failure to address the jury's question left the jury without the necessary understanding to evaluate the evidence properly, impacting the fairness of the trial.

## II. The District Court's Instruction on the Civil Service Decisions Was Inadequate and Prejudicial.

Appellees defend the District Court's limiting instruction on the Civil Service Commission decisions as sufficient, but this mischaracterizes both the instruction and the context in which the evidence was used. The jury was merely told they could consider the decisions, "but it remains up to you whether the decision was retaliatory." (ECF 293 at 122:23-123:2). This is an impossible standard of proof by requiring Plaintiffs to show that the Civil Service "decision" itself was retaliatory rather than adverse actions that led to the decision. The court failed to explain that the Civil Service Commission asserted that it had no jurisdiction to consider claims of discriminatory harassment or retaliation under M.G.L. c. 151B—an omission that misled the jury and allowed Appellees to weaponize the decisions to suggest Appellant's 151B claims lacked merit. This error is particularly troubling because on Day 6 of the trial, the District Court stated in response to Appellants' argument that a limiting instruction was necessary to inform the jury that the Civil Service decision never addressed any issue of

discrimination or retaliation, "I think I tend to agree with you that they don't . . . and the Civil Service generally, as I understand it, steers clear of making a determination about whether or not there was anything discriminatory." (ECF 297 at 6:6-11). This issue was clearly argued and preserved.

Further, Appellees misused the decisions during closing arguments, stating they reflected "lack of credibility" regarding Appellants' claims of retaliatory adverse actions. The jury was never told to disregard that improper inference, and Appellants' request for a clarifying instruction was denied. (ECF 293 at 50:11). The District Court's failure to instruct the jury on the limited relevance of these decisions regarding Appellants' 151B claims allowed the defense to distort their significance and prejudice Appellants' case. This violated the standards under Fed. R. Evid. 105 and this Court's precedent in *McDonough v. City of Quincy*, 452 F.3d 8 (1st Cir. 2006).

### III. Appellees Improperly Suggested That Harassing Speech Was Protected By The First Amendment.

Appellees attempt to downplay their First Amendment defense as merely an acknowledgment of legal complexity. (Opp. at 16). But the record tells a different story. Appellees insinuated that the offensive and threatening social media posts at the heart of the hostile work environment claim were protected political speech—an argument that is foreclosed by binding precedent. *See Faragher v. City*

*of Boca Raton*, 524 U.S. 775 (1998); *Curran v. Cousins*, 509 F.3d 36, 50 (1st Cir. 2007).

During closing argument, Appellees told the jury that "[w]e're all living through the experiment with social media colliding with the First Amendment colliding with hate speech." (ECF 293 at 34:21-24). This statement directly implied that the speech in question, despite being harmful, was protected. Thus undermining the jury's understanding of its legal significance. The District Court should have, at minimum, provided a clarifying instruction stating that speech that contributes to a hostile work environment is not protected by the First Amendment. The absence of such an instruction left the jury confused about the legal standards governing employer liability.

This issue was preserved. During a sidebar discussion, Appellants' counsel expressed concern that Appellees might argue a First Amendment defense. On the record, Appellants' counsel stated: "I thought you were pretty clear that they were not allowed to argue the First Amendment in this case" (ECF 289 at 59:2-5). The District Court responded that it had not made a ruling to bar Appellees from invoking a First Amendment defense, but acknowledged Appellants' concern about the potential for such an argument to be made before the jury. (ECF 289 at 59:6-5). Appellants additionally preserved this issue by filing a formal "Motion *In Limine* to Preclude Defendants from Arguing First Amendment Defenses Related to

Offensive Social Media Posts" and renewed their objection regarding the First Amendment defense during the trial. (ECF 193; ECF 289 at 59:6-5).

### IV. The Jury Was Improperly Instructed on Supervisory Liability Under Chapter 151b.

Appellees claim that the District Court properly instructed the jury on employer liability under M.G.L. c. 151B, because the alleged harassers were not direct supervisors of Blake and Savage. (Opp. at 23). But, Appellees fail to acknowledge that Massachusetts law does not require the harasser to be a ***direct*** supervisor to hold the employer liable.

"Under Massachusetts law, an employer can be subject to liability for a hostile work environment under two circumstances. First, the employer is strictly liable if the acts of harassment were committed by a supervisor who is 'vested with authority.'" *Sauer v. Belfor USA Group, Inc.*, 205 F. Supp. 3d 209, 217 (D. Mass. 2016) (quoting *College-Town, Div. of Interco v. MCAD*, 400 Mass. 156, 167 (1987)). "To be considered a supervisor, an employee **need not be plaintiff's direct supervisor**. Instead, he may have actual supervisory authority over other subordinates and hold himself out as having authority over the plaintiff." 205 F. Supp. 3d at 217 (emphasis added). The second way an employer can be held liable for the actions of its non-supervisory employees is if it knew or should have known about the harassment and failed to implement prompt and appropriate action. *White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 261 (1st Cir.2000).

Under Massachusetts Chapter 151B, an employer can be held strictly liable for acts of harassment committed by a supervisor, even if that supervisor is not the direct supervisor of the employee who was harassed. Emphasis on the broad scope of employer liability for maintaining a hostile work environment highlights the responsibility of employers to address and remediate such environments, regardless of whether the harassment is directly related to the employee's immediate supervisor. *See Pelletier v. Town of Somerset*, 458 Mass. 504 (Mass 2010) ("The employer's liability under G.L. c. 151B is not limited to the actions of direct supervisors but extends to the overall environment created by those in positions of authority.").

At the Springfield Fire Department, all supervisors are mandatory reporters of harassment and have a duty to report when they observe such harassment. Appellants' Opening Brief at 28. Therefore, a supervisor's active involvement in harassing an employee, regardless of whether he is the employee's direct supervisor, is synonymous with a "refusal to protect the employee from coworker harassment" which *Noviello* described as a prime example of the "the power wielded by a harassing supervisor." *Noviello v. City of Bos.*, 398 F.3d 76, 96 (1st Cir. 2005) (citing *College–Town*, 508 N.E.2d at 593 regarding supervisory liability under chapter 151B). The broad scope of supervisory liability under Massachusetts

law focuses on the responsibilities of supervisors to prevent and report harassment, regardless of direct supervisory relationships.

Appellees' argument also fails to consider the command structure of the Springfield Fire Department. The paramilitary structure gave all supervisors actual supervisory authority and influence over subordinates, including the obligation to prevent and immediately report harassment. The supervisors involved in posting offensive social media content, such as Steve Balboni, Michael Ireland, and Louis Gaston, directly participated in and failed to discipline such behavior, thereby creating a permissive environment for others to do the same. Appellees' failure to discipline these supervisors encouraged approximately 15 other non-supervisory firefighters to engage in similar conduct, because they understood there were no disciplinary consequences. The Fire Commissioners' failures to enforce the department's anti-bullying and anti-discrimination policies against these supervisors, who were never held accountable for their actions, contributed to a culture where egregiously offensive behaviors, such as Michael Ireland's post: "Why I Think Racism in America is Good" –was implicitly tolerated.

The District Court erred by instructing the jury that the City could only be liable if a supervisor had knowledge of the harassment and failed to act. In instances of harassment by a supervisor, an employer is deemed to be constructively notified and is therefore strictly liable. The Supreme Judicial Court

settled this matter in stating, “we conclude that, in enacting G.L. c. 151B, § 4, the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority, without an additional notice requirement.” *Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 164, 508 N.E.2d 587, 592 (1987). The Appellees took full advantage of the error by emphasizing alleged limitations on their ability to monitor supervisors' private social media activity. This District Court’s legal error lowered the bar for Appellees and improperly narrowed the jury’s basis for imposing liability.

## CONCLUSION

The District Court’s cumulative errors—failing to clarify trial evidence, allowing misleading inferences from unrelated agency findings, condoning improper legal arguments, and misstating the law—deprived Appellants of a fair trial. Each error individually supports reversal; together, they compel it. This Court should vacate the judgment and remand for a new trial.

Dated: April 21, 2025

Respectfully submitted,

/s/Arnold J. Lizana III
Arnold J. Lizana III
Law Office of Arnold J. Lizana III
444 A North Main Street, Suite 304
East Longmeadow, MA 01028

Tel./Fax: (877) 443-0999
alizana@attorneylizana.com

## CERTIFICATE OF COMPLIANCE

I certify that the preceding brief complies with the Federal Rules of Appellate Procedure because it contains **2,258 words**, excluding the items permitted under Rule 32(f). This document complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 21, 2025

/s/Arnold J. Lizana III
Arnold J. Lizana III
Attorney for Plaintiff-Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on April 21, 2025.

Dated: April 21, 2025

s/Arnold J. Lizana III
Arnold J. Lizana III
Attorney for Plaintiff-Appellants